# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **JARED S. COLE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) **Case number 4:08cv-0032 HEA/TCM** |
| | ) |
| **DAVE DORMIRE and** | ) |
| **CHRIS KOSTER, Attorney General for** | ) |
| **the State of Missouri,**[1] | ) |
| | ) |
| **Respondents.** | ) |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Jared S. Cole (Petitioner), a Missouri prisoner, petitions the United States District

Court for the Eastern District of Missouri for federal habeas corpus relief from a March 22,

2002 conviction after a non-jury trial.[2]  See 28 U.S.C. § 2254.  Respondents filed a Response

---

[1]  At the time this action was filed, Petitioner was incarcerated at the Eastern Reception, Diagnostic and Correctional Center, where Steve Larkin (sic Larkins), the originally named Respondent, was then the Warden**.**  Petitioner recently advised the Court that he is now at the Jefferson City Correctional Center, where Dave Dormire is the Warden.  Therefore, the Court will substitute Dave Dormire for Steve Larkin as Respondent in this case.

[2]  Additionally, at the time he filed this action, Petitioner was serving one term of imprisonment of life without parole concurrently with three terms of life imprisonment after which he will serve one term of life imprisonment without parole concurrent with one term of life imprisonment, with all of those life sentences resulting from the judgment he is challenging in his federal habeas petition. Because at the time he filed this action, Petitioner was challenging a sentence he is going to serve in the future, the Attorney General of Missouri, Chris Koster, will be added as a proper party respondent.  See Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

[2]  Along with his habeas petition, Petitioner filed three attachments to the petition, identified by Petitioner as "attached: 1" through "attached: 3." (See Pet. Attachs. [Doc. 1 at 16-23 and Doc. 1-1 at 1-8].)  "Attached: 1" is a partial copy of the findings of fact and conclusions of law issued by the postconviction motion court.  "Attached: 2" is a partially illegible copy of the decision of the Missouri

to the Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Response). Petitioner has not filed a reply.

This matter is before the undersigned United States Magistrate for a review and a recommended disposition. <u>See</u> 28 U.S.C. § 636(b). Finding the federal habeas petition presents three grounds for relief based on the allegedly ineffective assistance of counsel and concluding that one ground is procedurally barred and all grounds are without merit, the undersigned recommends denying the petition without further proceedings.

## <u>Background</u>

Petitioner was charged with two counts of murder in the first degree, in violation of Revised Missouri Statutes § 565.020, for the shooting deaths of Hu-Tepa A. Young and Martisha S. Martin on June 22, 2000; robbery in the first degree, in violation of Revised Missouri Statutes § 569.020, for forcibly taking property from Young on June 22, 2000, while

---

Court of Appeals in Petitioner's postconviction appeal. "Attached: 3" is a copy of the waiver of death penalty and waiver of jury trial executed by Petitioner, his trial counsel, and the prosecuting attorney in the underlying trial proceedings and accepted by the trial court in those proceedings. These materials are also part of the exhibits Respondents filed [Doc. 10]. When considering these materials, the Court will refer to the legible and complete copies of those materials filed by Respondents.

The copy of the Missouri Court of Appeals decision in Petitioner's postconviction proceeding that Respondents provided, Exhibit M, however, is missing pages 2, 4, and 6 of the published part of that decision. The unpublished part of that decision provided as part of Exhibit M is complete. Therefore, the Court will refer to the published version of that decision, at **<u>Cole v. State</u>**, 218 S.W.3d 551 (Mo. Ct. App. 2007) (per curiam), instead of the partial copy of the published version of that decision provided by Respondents. The Court will refer to Exhibit M for the complete unpublished portion of that appellate court decision provided by Respondents.

armed with a deadly weapon;[3] and three counts of armed criminal action, in violation of Revised Missouri Statutes § 571.015, related to the three murder and robbery offenses. (Information, filed October 24, 2000, Resp't Ex. A at 1-6 [all of Respondents' exhibits are part of Doc. 10]; see also Am. Information, filed January 22, 2002, Resp'ts. Ex. A at 113-17; Trial Tr., Vol. I, at 69-70, Resp'ts. Ex. C.)

The State waived the death penalty on the murder charges and Petitioner waived trial by jury, which was accepted by the trial court. (Id. at 118-19; see also Trial Tr. Vol. II, Resp'ts. Ex. D at 148.) After a non-jury trial, the trial court found Petitioner guilty of all six charged offenses. (Trial Tr., Vol. II, at 247-51, Resp'ts. Ex. D.) The trial court subsequently sentenced Petitioner to terms of imprisonment of life without parole on the two first degree murder offenses and terms of life on each of the four first degree robbery and armed criminal action offenses, with the concurrent life without parole and life sentences imposed for the first degree murder and armed criminal action offenses related to Martin's death running consecutively to the other concurrent sentences. (Id. at 263-65; Sentence and Judgment, Resp'ts. Ex. A., Legal File at 123-26.) Throughout the trial court proceedings, Petitioner was represented by Bradford Kessler and Sharon Turlington.

---

[3] By the original information, the State alleged as part of the first degree robbery charge that Petitioner forcibly stole United States currency from Young. (Information, filed Oct. 24, 2000, Resp'ts. Ex. A at 1-6 [all of Respondents.' exhibits are part of Doc. 10].) In the amended information, the State alleged as part of the first degree robbery charge that Petitioner stole an automobile, United States currency, a wallet, and other items in Young's possession. (Am. Information, dated Jan. 22, 2002, Ex. A at 113-17.) The amended information also contains a few other changes from the original information, but the six charges remained the same.

Through different counsel, Petitioner raised one point in his timely direct appeal. (Petr. Br., Resp'ts. Ex. E., at 26, 28.) In that point, Petitioner argued the trial court erred, and violated Petitioner's rights to due process, fair trial, and proof beyond a reasonable doubt, by overruling Petitioner's motions for judgment of acquittal and finding him guilty of the first degree murder offenses and the related armed criminal action offenses[4] because the only evidence that Petitioner did the shootings was a police officer's testimony that Petitioner stated he committed the killings himself. (Id.) Petitioner argued that testimony was not sufficient to establish Petitioner coolly reflected on the killings, and Petitioner was not physically large enough to have committed those offenses alone. (Id.) The Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's conviction in a summary per curiam order, dated May 18, 2004, and issued its mandate on June 23, 2004. (Resp'ts. Exs. G and H; **State v. Cole**, 136 S.W.3d 114 (Mo. Ct. App. 2004) (per curiam).) Petitioner did not file a motion for transfer to the Missouri Supreme Court. (See, e.g., Pages 6-7 of the D o c k e t   S h e e t   f o r   **S t a t e   v.   C o l e**,   N o.   E D 8 2 5 1 4, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Dec. 21, 2010).)

On August 13, 2004, Petitioner filed a timely pro se motion for postconviction relief,

---

[4] In his point on direct appeal, Petitioner specifically referred to "Counts I and II." Those counts are the first degree murder and armed criminal action charges pertaining to Young's death only. (See Am. Information, filed Jan. 22, 2002, Resp'ts. Ex. A at 113-14.) Counts III and IV are the first degree murder and armed criminal action charges pertaining to Martin's death. (See id. at 114-15.) Because Petitioner's point on direct appeal and argument in support of that point address the shooting deaths of both victims, the Court understands Petitioner's direct appeal challenges the sufficiency of the evidence as to the shooting deaths of both victims.

including a request for an evidentiary hearing. (Postconviction Mot., Resp'ts. Ex. I at 4-10.) Thereafter, through another attorney, Petitioner filed an amended postconviction motion, including a request for evidentiary hearing. (See Am. Postconviction Mot., Resp'ts. Ex. I at 11-62 [Doc. 10].) By this motion, Petitioner presented three claims that his attorneys at trial and on direct appeal provided ineffective assistance of counsel.

For his first claim for postconviction relief, Petitioner argued that one of his trial attorneys, Kessler, had an actual conflict of interest due to simultaneous representation that adversely affected his performance on behalf of Petitioner in violation of the Sixth Amendment to the United States Constitution. (Id. at 14-15.) Specifically, Petitioner contended that Kessler represented Petitioner, while, upon Kessler's suggestion, Kessler's law partner, Daniel E. Diemer, represented Petitioner's brother, Nathaniel Cole (Nathaniel),[5] who was questioned about the offenses but not charged and who asserted his Fifth Amendment right against self-incrimination during Petitioner's criminal proceedings. (Id. at 17-20.) Due to the divergence between Nathaniel's interest against self-incrimination and Petitioner's interest in confrontation, cross-examination, and the presentation of a complete defense, Petitioner urged there existed a conflict of interest that prevented Kessler from providing Petitioner with effective assistance of counsel. (Id. at 20.) The adverse impact on Kessler's performance, Petitioner urged, was shown by Kessler's failure to call Nathaniel to testify in Petitioner's defense and by Diemer's advice to Nathaniel to assert his Fifth Amendment right

---

[5] To avoid confusion due to identical last names, the Court will refer to Petitioner's brother as Nathaniel. The Court means no disrespect by referring to Petitioner's brother by his first name.

against self-incrimination during Petitioner's criminal case.  (Id. at 21.)

For his second claim for postconviction relief, Petitioner argued both of his trial attorneys, Kessler and Turlington, provided ineffective assistance of counsel by failing fully to investigate whether the prosecutor had promised the prosecution's key witness, James Lackland, a lenient disposition of pending charges in exchange for his testimony at Petitioner's trial and by failing to impeach Lackland based on that promise of leniency.  (Id. at 31.)  The charges pending against Lackland were for tampering with physical evidence arising out of Lackland's disposal of the weapon and some of Young's possessions after the shootings, and, Petitioner urged, Lackland's credibility was significant because he testified Petitioner was responsible for the six charged offenses while Petitioner implicated Lackland as the perpetrator of those offenses.  (Id. at 34-35.)

For the third claim in his postconviction motion, Petitioner argued that the attorney who represented him on direct appeal provided ineffective assistance of counsel by failing to assert on appeal that the trial court plainly erred in accepting Petitioner's waiver of his right to a jury trial because that waiver was conditioned only on the prosecutor's waiver of the death penalty, a punishment that could not be imposed on Petitioner because he was seventeen years old at the time of the offenses, citing to **State ex rel. Simmons v. Roper**, 112 S.W.3d 397 (Mo. 2003) (en banc) (**Simmons**), aff'd, 543 U.S. 551 (2005). (See Postconviction Legal File, Resp'ts. Ex. I at 44-45.)

After Petitioner's deposition (id. at 64-119) and an evidentiary hearing at which

Petitioner, Petitioner's trial and appellate counsel, Diemer, Nathaniel, and Petitioner's parents testified (Postconviction Hr'g Tr., Resp'ts. Ex. J), the motion court denied Petitioner's pro se and amended postconviction motions on December 19, 2005 (Findings of Fact, Conclusions of Law, & Judgment (Judgment), Resp'ts. Ex. I at 120-28).

With respect to the second claim for relief, the motion court stated[6]

### 2. Claims of ineffectiveness of trial counsel Kessler and Turlington.

In paragraph 8b of his amended motion, [Petitioner] claims that both of his trial attorneys were ineffective in not fully investigating whether the St. Louis County Prosecuting Attorney had offered a State witness, James Lackland, a deal on a pending tampering case in exchange for Lackland's testimony against [Petitioner]. He also claims that both trial counsel[] were ineffective for failing to impeach Lackland on the basis of this alleged deal. In denying this claim, the court makes the following findings:

> a. Trial counsel Turlington diligently investigated whether or not Lackland was offered a deal by the St. Louis County Prosecuting Attorney's office.

At the Rule 29.15 hearing, Ms. Turlington testified that she asked both prosecutors assigned to [Petitioner]'s case if Lackland had received a deal in St. Louis County. Both attorneys told her that Lackland received no specific deal in exchange for his testimony, and that the recommendation in his case would be made by the St. Louis County Prosecutor's office afer the conclusion of [Petitioner]'s case. Turlington also took Lackland's deposition before the trial and asked him directly if he had received a deal. Lackland testified that he had not received any specific recommendation in his St. Louis County case. (Lackland Depo. P. 29-32).[7]

Finally, during the trial when the prosecutor asked Lackland if he had

_____

[6] This part of the motion court's decision is quoted here because Petitioner did not pursue this aspect of the decision in his postconviction appeal.

[7] A transcript of this deposition is not available of record.

received a specific deal in exchange for his testimony, Lackland indicated that he had not. (Trial transcript [at] 221 and 22[2]).

The Court finds that Ms. Turlington fully investigated the issue of whether or not Lackland had received a plea agreement in exchange for his testimony. Cole received effective assistance of counsel in this matter.

b. [Petitioner] failed to show that Lackland received a plea agreement in exchange for his testimony.

[Petitioner] bears the burden of proof. Despite alleging in his pleadings that Lackland had received a deal in exchange for his testimony, [Petitioner] ha[s] failed to produce any evidence of that fact. [Petitioner] could have subpoenaed the court file in Lackland's case or called[] the prosecutor handling Lackland's case as a witness[] in order to show whether or not there was any plea agreement. [Petitioner] chose to do neither of these things, therefore, failing to meet his burden of proof and failing to show the existence of any prejudice to him. The only evidence before the Court is the testimony of Turlington and Lackland's testimony at the trial and in his deposition (both part of the file in CR100-1606FX of which the Court took judicial notice) [and] that evidence conclusively shows that Lackland received no specific deal in St. Louis County in exchange for his testimony against [Petitioner].

Judgment at 5-7 (Resp'ts. Ex. I at 124-26) (footnote added).

In his timely postconviction appeal, Petitioner raised two points, similar to the first and third claims he had presented in his amended postconviction motion. First, Petitioner argued the motion court clearly erred in denying his postconviction motion based on Kessler's actual conflict of interest that adversely affected Kessler's performance during trial, in that Kessler and Nathaniel's attorney, who had been suggested by Kessler, were in the same law firm; Petitioner wanted Nathaniel to testify but, on advice of counsel, Nathaniel asserted his Fifth Amendment privilege against self-incrimination; and Kessler did not call Nathaniel as a witness at Petitioner's trial. (Pet'r Br., Resp'ts. Ex. K, at 35, 39.) Petitioner urged that this

violated his rights to due process, to the effective assistance of counsel, to present a complete defense, and to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Id.) In his second point, Petitioner contended the motion court clearly erred in denying his postconviction motion based on his appellate attorney's failure to raise on appeal plain error in the trial court's acceptance of Petitioner's waiver of his right to a jury trial, which was involuntary in that it was conditioned only on the State's waiver of the death penalty when the death penalty could not be imposed on a defendant, such as Petitioner, who was under eighteen years of age at the time of the offenses. (Id. at 37, 50.) Petitioner argued this error denied him his rights to due process of law, to effective assistance of counsel, to a jury trial, and to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Id.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's decision. **Cole**, 218 S.W.3d 551 and Memorandum at Resp'ts. Ex. M for the unpublished portion of the appellate court opinion. The appellate court concluded Petitioner's appellate attorney did not provide ineffective assistance in failing to raise on direct appeal a contention that the trial court plainly erred in accepting Petitioner's jury waiver because it was based only on the State's waiver of the death penalty, which had been found not to be available for those defendants who were under eighteen at the time of their offenses. **Cole**, 218 S.W.3d at 552-54. In reaching its decision, the state appellate court noted that, at the time of Petitioner's waiver of a jury trial, the law allowed imposition of the death penalty on a

seventeen-year-old, such as Petitioner, and a subsequent judicial decision making imposition of a death penalty unconstitutional, such as **Simmons**, supra, did not invalidate a prior guilty plea entered to avoid the death penalty, **Brady v. United States**, 397 U.S. 742, 756-57 (1970); **Davis v. State**, 517 S.W.2d 97, 104 (Mo. 1974). **Cole**, 218 S.W.3d at 553-54. Because a guilty plea includes a waiver of jury trial, **State v. Shafer**, 969 S.W.2d 719, 731 (Mo. 1998) (en banc), see also **Boykin v. Alabama**, 395 U.S. 238, 243 (1969), the state appellate court concluded the alleged error here would not be reversible error if it had been raised on appeal and, therefore, Petitioner's appellate counsel did not provide ineffective assistance. **Cole**, 218 S.W.3d at 554.

With respect to the other point, that Kessler provided ineffective assistance during the trial proceedings due to a conflict of interest resulting in his failure to call Nathaniel as a witness at Petitioner's trial, the state appellate court reviewed the evidence before the motion court and found Diemer advised Nathaniel to assert his Fifth Amendment right against self-incrimination before Diemer and Kessler became law partners and after those attorneys became law partners both Petitioner and Nathaniel knew about the partnership and did not oppose the attorneys' representation. Unpublished opinion of the Missouri Court of Appeals in the postconviction proceeding, Resp'ts. Ex. M, at 3-4. The appellate court noted that the prejudice needed to establish an ineffective assistance of counsel claim due to a conflict of interest "is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's

performance.'" Id. at 5-6 (internal quotation marks omitted) (quoting Strickland v. Washington, 466 U.S. 668, 692 (1984)). Prejudice could not be presumed here, the state appellate court found, because Kessler advised Nathaniel to retain separate counsel and that separate counsel, Diemer, advised Nathaniel to assert the Fifth Amendment all before Kessler and Diemer were law partners, and the subsequent law partnership was disclosed to Petitioner and Nathaniel. Id. at 6. Therefore, Petitioner had not shown that Kessler had an actual conflict of interest that adversely affected his representation. Id.

Additionally, the state appellate court found no adverse effect on Kessler's performance because Petitioner did not establish that Kessler would have or should have called Nathaniel as a witness if Kessler and Diemer remained in separate law practices. Id. The state appellate court specifically noted that the motion court had "found that . . . Kessler decided not to call [Nathaniel] as a witness [at Petitioner's trial] because [Nathaniel] would hurt rather than help [Petitioner]'s case and because [Kessler] believed [Nathaniel] would perjure himself." Id. Noting that ineffective assistance of counsel does not exist where it is based on a refusal "to call a witness who would adversely affect a defendant's case" or who would provide perjured testimony, the state appellate court concluded Petitioner failed to establish any adverse effect on Kessler's performance. Id.

The appellate court issued its mandate in the postconviction appeal on May 11, 2007, after the denial of transfer to the Missouri Supreme Court. (Page 3 of the Postconviction Appellate Court Docket Sheet, Resp'ts. Ex. N.)

On January 7, 2008, Petitioner timely filed this federal habeas proceeding. In his petition, Petitioner presents three claims that his trial and appellate attorney provided ineffective assistance of counsel. As his first ground for federal habeas relief, Petitioner argues Kessler provided ineffective assistance of counsel during the trial proceedings based on a conflict resulting from his law partner's, Diemer's, representation of Nathaniel and the failure of Nathaniel to testify at Petitioner's trial. (Pet. at 6 [Doc. 1 at 5].) For his second ground, Petitioner urges his trial attorneys, Kessler and Turlington, provided ineffective assistance of counsel by failing fully to investigate the promise of leniency the prosecutor made to Lackland in exchange for Lackland's testimony against Petitioner. (Id. at 7 [Doc. 1 at 6].) For his third ground for federal habeas relief, Petitioner urges his appellate attorney provided ineffective assistance by failing to pursue on direct appeal a plain error challenge to the trial court's acceptance of Petitioner's waiver of the right to a jury trial, because that waiver was based only on the state's waiver of the death penalty, a punishment that could not legally be imposed on Petitioner because he was under eighteen years old at the time of the offenses. (Id. at 9 [Doc. 1 at 8].)

Respondents counter that the second ground for relief is procedurally barred, and all of the grounds for relief lack merit. The Court will address Respondents' procedural bar argument first.

## Discussion

Procedural Bar. With respect to the ineffective assistance of trial counsel claim set

forth in ground two, Respondents argue that claim is procedurally defaulted because Petitioner did not pursue it in his postconviction appeal.

A state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of claims procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claims in state court, **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992), including the merits of a claim procedurally defaulted due to a failure to include the claim in a postconviction appeal. **Turnage v. Fabian**, 606 F.3d 933, 936, 940-42 (8th Cir. 2010) (not addressing the merits of a federal claim that had not been fairly presented in a brief to the state supreme court after the denial of postconviction relief); **Storey v. Roper**, 603 F.3d 507, 523-24 (8th Cir. 2010) (not addressing the merits of a claim that the petitioner had not pursued on appeal from the denial of postconviction relief), petition for cert. filed, __ U.S.L.W. ___ (U.S. Dec. 23, 2010) (No. 10-8163).

In Missouri, a postconviction proceeding is the exclusive procedure for pursuing ineffective assistance of counsel claims in state court, and successive postconviction motions are not permitted. Mo. S. Ct. Rule 29.15(a) and (l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Moreover, the Missouri Supreme Court Rules expressly provide for an appeal from a postconviction motion court's ruling. Mo. S. Ct. Rule 29.15(k). Therefore, for this Court to address the merits of an ineffective assistance of counsel claim, Petitioner

needed to pursue it in his postconviction motion and on appeal from the denial of that motion, or show cause and prejudice or a miscarriage of justice for the failure to pursue the claim in his postconviction appeal.  See **Turnage**, supra, and **Storey**, supra.

Here, Petitioner did not pursue in his postconviction appeal the ineffective assistance of trial counsel claim which he had presented in his amended postconviction motion and which he now pursues as ground two in his federal habeas petition.  Because that claim was not properly pursued in Missouri's courts, and Petitioner is foreclosed from now presenting that claim to the state courts, that ground for federal habeas relief is procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims."  **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007).  "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default."  **Murray**, 477 U.S. at 486.

Petitioner has not shown any cause for his failure to pursue this ineffective assistance of counsel claim on appeal, a claim which had been presented to and resolved by the motion court. Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted ground may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to consider its merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, the ineffective assistance of trial counsel claim presented

as ground two in Petitioner's habeas petition is procedurally barred and should not be considered on its merits.

 <u>Merits - Standard of Review.</u> Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 2412 (2010); <u>accord</u> **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at 1001; <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively

unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). A state court's summary decision is presumed to be on the merits for purposes of habeas review. **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001); see **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (concluding a summary disposition by the Missouri Supreme Court was an "adjudication of the [habeas claims] on the merits").

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and

to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court.  **Smulls**, 535 F.3d at 864-65.

Ground One - Ineffective Assistance of Trial Counsel - Conflict of Interest.  As his first ground for federal habeas relief, Petitioner argues Kessler, one of his trial attorneys, provided ineffective assistance of counsel based on an alleged conflict resulting from his law partner's, Diemer's, representation of Nathaniel and the failure of Nathaniel to testify at Petitioner's trial. (Pet. at 6 [Doc. 1 at 5].)

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense."  **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687).  More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the

customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v. Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting <u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) (quoting <u>McCauley-Bey v. Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting <u>McCauley-Bey</u>, 97 F.3d at 1105); <u>accord</u> **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697; **Williams v. Locke**,

403 F.3d 1022, 1025 (8th Cir. 2005).

The United States Supreme Court has recognized that the Sixth Amendment right to counsel includes "a correlative right to representation that is free from conflicts of interest." **Wood v. Georgia**, 450 U.S. 261, 271 (1981); **Smith v. Lockhart**, 923 F.2d 1314, 1320 (8th Cir. 1991). When an attorney has an actual conflict of interest, prejudice is presumed because, in such circumstances, the attorney is breaching one of the most basic of counsel's duties, the duty of loyalty. **Strickland**, 466 U.S. at 692 (citing Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980)). To be entitled to such a presumption, a petitioner must "demonstrate[] that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" **Id.** (quoting Cuyler, 446 U.S. at 350, 348)); **Winfield v. Roper**, 460 F.3d 1026, 1039 (8th Cir. 2006) (quoting Cuyler, 446 U.S. at 348)); see also **Mickens v. Taylor**, 535 U.S. 162, 166-76 (2002); **Koste v. Dormire**, 345 F.3d 974, 983 (8th Cir. 2003) (to obtain relief, a federal habeas petitioner need not demonstrate prejudice if the petitioner "shows that a conflict of interest *actually affected the adequacy of [the attorney's] representation*" (quoting Mickens, 535 U.S. at 171) (emphasis in original)).[8] "To be successful [the petitioner] would have to identify an actual and demonstrable adverse effect, 'not merely an abstract or theoretical one.'" **Winfield**, 460 F.3d at 1039 (quoting United States v. Flynn, 87

---

[8] The Eighth Circuit has noted that, based on a statement in **Mickens**, 535 U.S. at 172 n.5, a court should not consider the actual conflict separate from the adverse effect. See **Covey v. United States**, 377 F.3d 903, 908 n.3 (8th Cir. 2004). Rather, the court should determine an "actual conflict" exists for Sixth Amendment purposes when the conflict of interest adversely affects counsel's performance. Id.

F.3d 996, 1001 (8th Cir. 1996)).  This requires a petitioner "to identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict."  **Id.** (internal quotation marks omitted) (quoting <u>Covey</u>, 377 F.3d at 908).

Here, it is clear that any alleged conflict of interest due to Kessler's and Diemer's law partnership did not adversely affect Kessler's representation of Petitioner.  As the state appellate court found, even if Kessler and Diemer had separate law practices throughout Petitioner's criminal trial, Kessler would not have presented Nathaniel as a witness at Petitioner's trial.  Rather, Kessler testified that he did not want to call Nathaniel as a witness because Nathaniel would perjure himself.  (Mot. Hr'g Tr., Resp'ts. Ex. J, at 104-05, 117-18.)  Additionally, as the state court found, Nathaniel's counsel advised Nathaniel to assert the Fifth Amendment privilege against self-incrimination (<u>id.</u> at 60-61, 70-73). These findings are entitled to deference based on the applicable presumption of correctness, because Petitioner has not provided clear and convincing evidence to the contrary.  Therefore, Kessler chose not to call Nathaniel to testify at Petitioner's trial due to Kessler's concern that Nathaniel would perjure himself if he testified; and, if Nathaniel was called to testify, he would have asserted the Fifth Amendment privilege against self-incrimination.[9]  These circumstances, especially

_____

[9]  The record also supports the state court's findings that Kessler and Diemer were not in the same law firm when Kessler began his representation of Petitioner and Diemer began his representation of Nathaniel, or when Diemer advised Nathaniel to assert his Fifth Amendment right against self-incrimination; and that Petitioner and Nathaniel were aware of and did not object during

Nathaniel's assertion of the Fifth Amendment resulting in Kessler's failure to call Nathaniel as a witness at Petitioner's trial, are independent of and not linked to any alleged conflict of interest; therefore there is no effect, much less an adverse effect, on Kessler's representation of Petitioner due to any alleged conflict.  These circumstances also preclude a determination that Kessler's conduct in not presenting Nathaniel as a witness at Petitioner's trial was prejudicial under **Strickland**, <u>supra</u>.  <u>Cf</u>. **Noe v. United States**, 601 F.3d 784, 789 (8th Cir. 2010) (a contention that counsel provided ineffective "assistance of counsel because [the] attorney labored under a conflict of interest is considered under several different standards"; one standard is the <u>Strickland</u> standard).  This is so because the right to the effective assistance of counsel is not violated by an attorney who refuses to cooperate in presenting perjured testimony.  **Nix v. Whiteside**, 475 U.S. 157, 175-76 (1986).  The state court's determination that Kessler did not provide ineffective assistance of counsel due to his failure to present Nathaniel as a witness at Petitioner's trial was not contrary to, or an unreasonable application of, federal law.

To the extent this Court should not consider Kessler's concern about Nathaniel perjuring himself, <u>see</u> **Johnson v. Norris**, 207 F.3d 515, 519-20 (8th Cir. 2000) (concluding

the course of Petitioner's case to Kessler's and Diemer's law partnership once they entered into a law practice together during the pendency of Petitioner's criminal proceedings.  (<u>See</u>, <u>e.g.</u>, Mot. Hrg. Tr., Resp'ts. Ex. J, at 68-74, 83-84. 95-98, 104-05, 116-18; Pet'r. Dep. at 16-21 and 48, Resp'ts. Ex. I at 80-85 and 111.)  Petitioner has not provided clear and convincing evidence to overcome the presumption of correctness accorded those state court findings of fact.

there was no ineffective assistance of counsel, under either the <u>Strickland</u> or the conflict of interest test, in counsel's failure to present at trial a defense witness, who was represented by that counsel in another matter and who was reportedly going to perjure himself if he testified in the petitioner's trial, based on the district court's conclusion that a fear of prejudicing the witness's interests played no part in counsel's inaction), the Court notes Nathaniel's assertion, at Petitioner's trial, of his Fifth Amendment protection against self-incrimination would not have assisted in Petitioner's defense and counsel's decision not to call him based on the assertion of the Fifth Amendment constitutes a matter of reasonable trial strategy. <u>See</u> **<u>Battle v. Delo</u>**, 19 F.3d 1547, 1555-56 (8th Cir. 1994) (counsel's decision not to call a witness expected to plead the Fifth Amendment was a matter of reasonable trial strategy), <u>as amended on other grounds upon reconsideration,</u> 64 F.3d 347 (8th Cir. 1995). Therefore, Kessler's conduct in not calling Nathaniel falls within this Court's highly deferential analysis of counsel's conduct and the strong presumption that the conduct falls within the wide range of reasonable professional judgment constituting effective representation. <u>See</u> **<u>Armstrong</u>**, 534 F.3d at 863.

Furthermore, the decision of the United States Court of Appeals for the Eighth Circuit in **<u>Tunstall v. Hopkins</u>**, 306 F.3d 601 (8th Cir. 2002), supports this Court's recommendation to deny this ground for relief. In **<u>Tunstall</u>**, a jury convicted Tunstall of first degree murder and first degree burglary for the shooting death of Jeffrey Jones. **<u>Id.</u>** at 603. During trial, a police officer testified that "Dennis Jackson[,] . . . gave statements supporting the prosecution's theory that Tunstall had violent intent when looking for Jones. Specifically, [the

officer] testified, based on Jackson's statements, three or four black males threatened Jackson with a gun outside the motel and asked him where Jones lived." **Id.** at 604. Jackson, who had his own attorney, see **id.,** also gave "deposition testimony [that was] different from the statements [the officer] attributed to Jackson."[10] **Id.** "Jackson refused to testify during trial, invoking his Fifth Amendment right to remain silent, . . . [reportedly] because [his] prior deposition testimony was different from what he would testify [to] in court, and therefore [he] would be subject to perjury charges." **Id.** The State sought to admit Jackson's deposition "as primary evidence – testimony of an unavailable witness." **Id.** Tunstall's counsel objected to the admission "arguing the evidence was cumulative and perjurious [and that] he would not be able to challenge Jackson's credibility if Jackson did not testify." **Id.** The trial court sustained the objections. **Id.**

In his federal habeas proceedings, Tunstall contended "his trial counsel was ineffective when he did not offer the deposition testimony of Jackson to discredit the live testimony of [the o]fficer." **Id.** at 606. In part, Tunstall urged his "defense counsel should not have

---

[10] More specifically, the Eighth Circuit stated:

In his deposition, Jackson [testified] he had only seen Tunstall and [co-Defendant] Frasier in the motel room, and they came to talk to him because Frasier heard Jackson had said Frasier was a 'snitch.' During the deposition Jackson said no weapon was pointed at him, but Frasier held a gun down to this side, and no threats were made. Jackson stated the three discussed Jones in the context of seeing him on the previous Saturday night when Jones had damaged some of Frasier's property. Further, Jackson stated Frasier was looking for Jones.

**Tunstall**, 306 F.3d at 604.

presumed the [Jackson] deposition testimony was perjurious" and disputed the State's

contention that the deposition contained information detrimental to Tunstall.  **Id.**  In relevant

part, the Eighth Circuit concluded the state court's finding of no ineffective assistance of

counsel with respect to the Jackson deposition was not contrary to or an unreasonable

application of clearly established federal law, stating:

> the reason given for Jackson's refusal to testify was that he would subject himself to perjury charges for his prior deposition testimony.  Had Tunstall's counsel failed to object to the submission of Jackson's deposition, or admitted it himself, Tunstall could have then argued the prosecution or his own counsel "knew or should have known of the perjury," and the knowing presentment of false testimony violated due process.  See United States v. Papajohn, 212 F.3d 1112, 1117 (8th Cir. 2000) [abrogated on other grounds, Crawford v. Washington, 541 U.S. 36 (2004)].  This court finds counsel's conduct imminently reasonable in excluding probably perjurious testimony.
>
> Assuming *arguendo,* the exclusion of Jackson's deposition caused Tunstall prejudice, the deposition's probably perjurious nature makes such prejudice illegitimate.  As the Supreme Court recently observed:
>
>> [T]here are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate "prejudice."  Even if a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury.
>
> Williams [v. Taylor], 529 U.S. [362,] 391-92 [(2000)] (citing Nix v. Whiteside, 475 U.S. 157, 175-76 . . . (1986)).

**Tunstall**, 306 F.3d at 607-08 (second alteration in original).  Similarly, here, Petitioner's

counsel's failure to introduce "probably perjurious testimony" was "imminently reasonable";

and the state court's conclusion that it was not ineffective assistance of counsel is not contrary

to or an unreasonable application of clearly established federal law. Nor is that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground one should be denied.

Ground two - Ineffective Assistance of Counsel - Failure to Investigate. To the extent the Court should consider the merits of Petitioner's claim that his trial attorneys provided ineffective assistance of counsel allegedly due to a failure to investigate and present at trial any agreement of leniency Lackland received in exchange for his testimony at Petitioner's trial, the Court recommends denying this claim on the grounds it lacks merit.

As noted earlier, an accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum**, 509 F.3d at 502 (citing Kimmelman, 477 U.S. at 377). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687); **Kellogg**, 176 F.3d at 452.

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman**, 181 F.3d at 972 (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong**, 534 F.3d at 863 (citing Strickland, 466 U.S.

at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White**, 194 F.3d at 941 (quoting Nolan, 973 F.2d at 618). The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton, 455 F.3d at 846).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong**, 590 F.3d at 595-96 (quoting McCauley-Bey, 97 F.3d at 1105). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596; accord **Carroll**, 243 F.3d at 1100 (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence**, 961 F.2d at 115.

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus**, 157 F.3d at 1140. Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams**, 403 F.3d at 1025.

A trial attorney "is required to make a reasonable investigation in preparing [a defendant's] defense, including reasonably deciding when to cut off further investigation." **Winfield**, 460 F.3d at 1034 (citing Strickland, 466 U.S. at 691). "When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a

significant degree of deference given to counsel and his or her professional judgment."
**Griffin v. Delo**, 33 F.3d 895, 901 (8th Cir. 1994).

Here, the state motion court concluded that Petitioner's trial counsel did not provide ineffective assistance of counsel due to an alleged failure to investigate and present evidence of any leniency offered to Lackland in exchange for his testimony at Petitioner's trial. Specifically, the motion court found, based on Turlington's testimony, that, prior to trial, Petitioner's trial counsel sought information about the existence of leniency arrangements from the prosecutors and from Lackland himself. (Judgment at 5-7, Resp'ts. Ex. I at 124-26.) Moreover, as the motion court noted, during trial, Lackland testified that he had not received a specific deal in exchange for his testimony. (Id.)

The record supports the conclusion that Petitioner's trial counsel engaged in an adequate investigation of any leniency arrangements between Lackland and the prosecutors on Lackland's then-pending criminal case, and did not provide Petitioner with ineffective representation based on that investigation. Petitioner has not rebutted the motion court's factual findings regarding trial counsel's investigation of any leniency provided to Lackland in exchange for his testimony at Petitioner's trial, much less rebutted those findings by clear and convincing evidence. Based on that investigation, as well as Lackland's testimony at trial, there was no information regarding a leniency arrangement for Lackland that Petitioner's counsel should have presented during Petitioner's trial. The state court's decision on this claim is not contrary to or an unreasonable application of clearly established federal law. Nor

is that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground two should be denied.

Ground three - Ineffective Representation of Appellate Counsel.  For his third ground for federal habeas relief, Petitioner urges his appellate attorney provided ineffective assistance by failing to pursue on direct appeal a plain error challenge to the trial court's acceptance of Petitioner's waiver of the right to a jury trial, because that waiver was based only on the state's waiver of the death penalty, a punishment that could not legally be imposed on Petitioner because he was under eighteen years old at the time of the offenses.  (Id. at 9 [Doc. 1 at 8].)

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal.  See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985); **Douglas v. California**, 372 U.S. 353, 357-58 (1963).  The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland**, supra.  **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996).  Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance.  See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers.  See **Jones v. Barnes**, 463 U.S. 745, 751-52

(1983); **Gee**, 110 F.3d at 1352; **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994); see also

**Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the

Sixth Amendment, counsel is neither required nor even advised to raise every conceivable

issue on appeal").  If an issue an appellate attorney failed to raise on appeal is not meritorious,

then appellate counsel cannot be considered ineffective for having failed to argue that issue

on appeal.  See **Grubbs v. Delo**, 948 F.2d 1459, 1466-67 (8th Cir. 1991) (finding no merit

to the petitioner's argument that his confession was inadmissible and, therefore, the

petitioner's direct appeal counsel "could not have been ineffective for failing to argue the

issue"); **Thompson v. Jones**, 870 F.2d 432, 434-35 (8th Cir. 1988) (the petitioner's double

jeopardy claim was without merit, so there was no prejudice and the "petitioner [wa]s not

entitled to any [federal habeas] relief on the grounds of ineffective assistance of counsel" on

appeal).  Moreover, an attorney's failure to raise on appeal an issue subject to plain error

review may not constitute the ineffective assistance of appellate counsel.  **Gee**, 110 F.3d at

1352.

For the prejudice element of his ineffective assistance of appellate counsel claim,

Petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure

to [assert the waiver issue on appeal], he would have prevailed on his appeal."  **Smith**, 528

U.S. at 285.

As with an ineffective assistance of trial counsel claim, the Court may resolve an

ineffective assistance of appellate counsel claim by finding either no prejudice or no deficient

performance and, if either element is not satisfied, the Court does not need to address the other element.  **Id.** at 286 n. 14.

Here, the flaw in this ground for relief is that the state appellate court that reviewed this challenge in his postconviction proceeding would have reviewed the waiver issue had it been raised on direct appeal, and that court found "that reversal would [not] have been warranted had the issue been raised on appeal."  **Cole**, 218 S.W.3d at 554.  Therefore, Petitioner's position that the waiver issue, had it been raised and briefed on direct appeal, would have resulted in reversible error is refuted by the very court that would have decided the question on direct criminal appeal.  Because an attorney cannot provide ineffective assistance in omitting an unwinnable issue from a direct appeal, and Petitioner would not have prevailed on direct appeal if the issue had been included in that appeal, Petitioner's third ground for relief lacks merit.

The state court's determination that Petitioner's appellate attorney did not provide ineffective assistance of counsel in failing to raise on appeal a plain error challenge to the trial court's acceptance of  Petitioner's waiver of his right to a jury trial was not contrary to or an unreasonable  application of clearly established federal law.  See, e.g., **Brady**, supra, and **Boykin**, supra.  Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground three should be denied.

## Conclusion

After careful consideration, the undersigned recommends the denial of Petitioner's petition for federal habeas relief because Petitioner's second ground for federal habeas relief is procedurally barred and each of Petitioner's three grounds for federal habeas relief lack merit. Accordingly,

**IT IS HEREBY ORDERED** that Dave Dormire is **SUBSTITUTED** for Steve "Larkin" (sic Larkins) as a Respondent in this case.

**IT IS FURTHER ORDERED** that the Attorney General for the State of Missouri, Chris Koster, is added as a Respondent in this case.

**IT IS FINALLY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Jared S. Cole be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of January, 2011.